[No. B212074. Second Dist., Div. Two. Dec. 1, 2009.]

MOHAMMED AMAL GUESSOUS et al., Plaintiffs and Appellants, v. CHROME HEARTS, LLC, Defendant and Appellant.

**COUNSEL**

Murphy Rosen & Meylan, Robert L. Meylan and Jodi M. Newberry for Plaintiffs and Appellants.

Blakely Law Group, Brent H. Blakely and Cindy Chan for Defendant and Appellant.

**OPINION**

**DOI TODD, Acting P. J.**—In this appeal from the denial of a motion to strike under Code of Civil Procedure section 425.16, the "anti-SLAPP statute,"[1] the primary issue is whether the filing of a lawsuit in a foreign country is protected activity under the United States or California Constitutions so as to implicate the statute. We conclude that it is not and affirm the order denying the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are Mohammed Amal Guessous, a United States citizen who lives in Los Angeles, California, and Five Bis, a French limited liability company with its principal place of business in Paris, France. Guessous created a line

---

[1] SLAPP is an acronym for strategic lawsuit against public participation. Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure. An order granting or denying a special motion to strike under section 425.16 is directly appealable. (§ 425.16, subd. (i); § 904.1, subd. (a)(13).)

of jewelry and a collection of clothing and leather products. His collections were sold exclusively in the United States until April 2007 when he opened stores in Paris and Tokyo. He holds an ownership interest in Five Bis, which markets and sells his products.

Defendant Chrome Hearts, LLC, is a Delaware limited liability company with its principal place of business in Los Angeles. Chrome Hearts designs, manufactures and sells artistically styled leather goods, apparel, jewelry and accessories. It is the owner of the word mark "Chrome Hearts," as well as various other semifigurative marks and logos, and is entitled to the exclusive use and benefit of all of its registrations.

In 1996, Chrome Hearts sued Guessous and others in the United States District Court for the Central District of California, for trademark and copyright infringement with respect to certain jewelry offered for sale by Guessous. The parties settled the matter and Guessous agreed to discontinue selling certain jewelry designs.

In 1998, Chrome Hearts filed another action in the same federal court against Guessous and other companies for infringement of certain jewelry designs, trademarks and copyrights. In August 1999, the parties entered into a written settlement agreement that contained the following covenant not to sue: "Chrome Hearts covenants and agrees that it will not sue Guessous for trademark infringement, trade dress infringement, unfair competition, or similar or related claims whose gravamen is alleged consumer or buyer confusion or potential confusion, including any claim based on the alleged similarity between the overall look and feel of Chrome Hearts' products and products designed, manufactured, or sold by Guessous. [¶] This covenant applies worldwide, from the date of the Settlement Agreement to the end of time, not only to the existing lines of clothing and jewelry manufactured and sold by Guessous and Chrome Hearts, but also to future products not yet designed, manufactured, and/or sold. Provided, however, this covenant not to sue does not apply to claims by Chrome Hearts against Guessous alleging that Guessous has used the 'Chrome Hearts' mark." The settlement agreement also provided that it would bind and benefit the settling parties' affiliated entities.

In 2006, Chrome Hearts opened its own boutique in Paris. In May 2007, Chrome Hearts sued Five Bis in the Paris Court of First Instance (Tribunal de Grande Instance), alleging infringement of "Chrome Hearts" trademarks and seeking to enjoin Five Bis from using these marks. In opposition, Five Bis argued that the claims were barred by the parties' covenant not to sue. The French court rejected this argument and enjoined Five Bis from using the Chrome Hearts marks. Five Bis appealed, and the Paris Court of Appeals

(Cour d'appel de Paris) affirmed the lower court. Five Bis appealed this ruling to the French Supreme Court (Cour de Cassation), and also filed a request for reappraisal in the Paris Court of Appeals. These appeals were still pending at the time of the trial court's ruling on the motion to strike at issue here.

In December 2007, Chrome Hearts filed a second action against Five Bis in France, alleging infringement of the "Chrome Hearts" trademark. That action is still pending in France.[2]

Plaintiffs then filed suit in the Superior Court of Los Angeles County against Chrome Hearts for breach of contract and declaratory relief, alleging that the filing of the French actions violated the covenant not to sue. They also sought to permanently enjoin Chrome Hearts from proceeding with the two trademark infringement actions being prosecuted in France, and from ever filing another lawsuit against plaintiffs anywhere in the world alleging trademark infringement, trade dress infringement, unfair competition, or any similar or related claim, except claims against Guessous of misuse of the words "Chrome Hearts."

In response, Chrome Hearts filed a special motion to strike the complaint under the anti-SLAPP statute. The trial court ruled that the statute applied to plaintiffs' causes of action but found that plaintiffs had established a prima facie case for their claims and denied the motion. Chrome Hearts appealed denial of the motion, and plaintiffs have cross-appealed.

## DISCUSSION

I. *The Anti-SLAPP Statute and the Standard of Review.*

 The anti-SLAPP statute is aimed at curbing "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a); see *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 738–739 [3 Cal.Rptr.3d 636, 74 P.3d 737].) The statute provides in relevant part: "A cause of action against a person arising from any act of that person in

---

[2] The complaint at issue in the case before us alleges only these two French actions. In their briefs on appeal, the parties mention that a third action has been filed in France by Chrome Hearts against Five Bis.

furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) An act "in furtherance of" the right of petition or free speech includes "any written or oral statement or writing made before a . . . judicial proceeding"; "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body"; "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"; or "any other conduct in furtherance of the exercise of the constitutional right of petition . . . of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(1)–(4).)

There are two components to a motion to strike brought under section 425.16. Initially, the party challenging the lawsuit has the threshold burden to show that the cause of action arises from an act in furtherance of the right of petition or free speech. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802]; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) Once that burden is met, the burden shifts to the complaining party to demonstrate a probability of prevailing on the claim. (*Zamos v. Stroud, supra*, at p. 965; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695].) To satisfy this prong, the plaintiff " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733]; see also *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568 [92 Cal.Rptr.2d 755] [to establish a probability of prevailing, a plaintiff must substantiate each element of the alleged cause of action through competent, admissible evidence].) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

We independently review the record to determine whether the asserted causes of action arise from the defendant's free speech or petitioning activity, and, if so, whether the plaintiff has shown a probability of prevailing. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30]; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786].) We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the

liability or defense is based." (§ 425.16, subd. (b)(2); see *Flatley v. Mauro* (2006) 39 Cal.4th 299, 326 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

## II. *The Anti-SLAPP Statute Does Not Apply to Plaintiffs' Claims.*

### A. *Contentions on Appeal*

Plaintiffs contend that the trial court erred in finding that the anti-SLAPP statute was applicable to their claims. They argue that a protected claim under section 425.16, subdivision (b)(1) is limited to one "against a person arising from any act of that person *in furtherance of the person's right of petition or free speech under the United States or California Constitution* in connection with a public issue," and that neither the United States nor the California Constitutions protect lawsuits filed in a foreign country. (Italics added.)

The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Plaintiffs note that the First Amendment refers to "the Government," not "a government," or "any government," and cite two federal antitrust cases in which district courts have declined to apply First Amendment protection to petitioning activity in foreign countries. (See *Australia/Eastern U.S.A., etc. v. United States* (D.D.C. 1982) 537 F.Supp. 807, 812 ["Of course, the first amendment was not intended to protect the right to petition foreign governments."]; *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.* (C.D.Cal. 1971) 331 F.Supp. 92, 108 ["The constitutional freedom 'to petition the Government' carries limited if indeed any applicability to the petitioning of foreign governments."].)

Article I, section 3 of the California Constitution provides: "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." We are aware of no case that holds that the California Constitution protects an individual's right to petition a foreign government or that California courts should read the petitioning clause of the California Constitution more broadly than the United States Constitution. Plaintiffs argue that it would defy logic to interpret the California Constitution as protecting a Californian's right to file a lawsuit in France.

Chrome Hearts, on the other hand, focuses on the introductory language of section 425.16, subdivision (a) which states: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of

speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly." Chrome Hearts points out that the statute defines " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " to include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1).) Chrome Hearts asserts that because the filing of litigation is protected activity (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 90), the location of the protected activity that brings a case within California's anti-SLAPP statute is irrelevant.

### B. *Foreign Petitioning Not Protected*

█ In examining statutory language, we begin by " 'giving the words their usual and ordinary meaning.' [Citations.] If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.]" (*Estate of Griswold* (2001) 25 Cal.4th 904, 911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) █ The express language of the anti-SLAPP statute limits motions to strike to causes of action arising from any act "in furtherance of the person's right of petition or free speech *under the United States or California Constitution* in connection with a public issue." (§ 425.16, subd. (b)(1), italics added.) This language is plain and unambiguous. It clearly limits the petitioning or free speech activity to that made pursuant to rights granted by the United States or California Constitutions, and neither Constitution grants a United States citizen the right to petition a foreign government.

Moreover, while we need not look to the legislative history when, as here, the statutory language is unambiguous (see, e.g., *Estate of Griswold, supra*, 25 Cal.4th at p. 911), a review of the legislative history of section 425.16 bolsters plaintiffs' position. " '[SLAPP suits] are lawsuits designed to silence ordinary citizens from trying to influence *their government*. In a democratic society with the right to petition government being one of the fundamental liberties, we want to encourage participation.' " (Sen. Com. on Judiciary, com. on Sen. Bill No. 1264 (1991–1992 Reg. Sess.) ch. 726, italics added.) Additionally, the comments section in Assembly Bill No. 1158 (2005–2006 Reg. Sess.) pertaining to section 425.18, involving SLAPP back actions, states: "According to the author, this bill clarifies the protections of California's anti-SLAPP law, which protects the public's First Amendment rights by prohibiting SLAPPs, lawsuits pursued solely to prevent members of the public from participating *in their government* or speaking out on public

issues." (Sen. Conc. Amends. to Assem. Bill No. 1158 (2005–2006 Reg. Sess.) as amended Aug. 24, 2005, p. 2, italics added.)

 We therefore hold that petitioning activity undertaken in a foreign country is not protected by the anti-SLAPP statute.

As such, it is clear that plaintiffs' two causes of action are not subject to a special motion to strike under section 425.16. It is undisputed that the first cause of action for breach of contract arises from the lawsuits filed by Chrome Hearts in France. Plaintiffs allege that Chrome Hearts breached the covenant not to sue by filing the two trademark infringement actions in France. Because the filing of these foreign lawsuits is not protected activity, section 425.16 does not apply to plaintiffs' breach of contract cause of action.

Plaintiffs' second cause of action for declaratory relief also arises from the filing of the trademark infringement lawsuits in France. A cause of action for declaratory relief, like any cause of action, must be based on an actual, present controversy. (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 79.) Here, the actual controversy alleged by plaintiffs is the extent to which Chrome Hearts can proceed with the lawsuits in France in light of the covenant not to sue. Plaintiffs seek a judicial determination of the extent to which Chrome Hearts may proceed with the French actions or any other lawsuit filed elsewhere in the world in light of the covenant not to sue, and pray for the remedy of an injunction to enforce that determination. Without the lawsuits Chrome Hearts filed in France, there would be no actual controversy upon which to base the claim for declaratory relief. Because the French litigation is not protected activity under the anti-SLAPP statute, the cause of action for declaratory relief is not subject to a special motion to strike.

 The trial court's contrary finding that section 425.16 did apply to plaintiffs' declaratory relief claim focused on the requests for prospective declaratory and injunctive relief based on the viability of *future* actions Chrome Hearts might file in this country. But there is no basis for a prospective grant of protection. As our Supreme Court has explained: "In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78.) In other words, " ' "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity

constitutes protected speech or petitioning." [Citation.]' " (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1478 [74 Cal.Rptr.3d 1].) Because the filing of the French actions is not protected activity, any requested prospective relief does not arise from protected activity. ■ Moreover, section 425.16 applies only to a cause of action, not to a *remedy*. "Injunctive relief is a remedy, not a cause of action." (*City of South Pasadena v. Department of Transportation* (1994) 29 Cal.App.4th 1280, 1293 [35 Cal.Rptr.2d 113].)

■ Even if prospective relief could implicate the anti-SLAPP statute, when a cause of action alleges both protected and unprotected activity, a court must examine the cause of action to determine whether protected activity forms the "principal thrust or gravamen" of the claim. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 472 [39 Cal.Rptr.3d 43]; see *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494], italics omitted.) It is clear from plaintiffs' complaint that the gravamen of the declaratory relief claim is a request for a determination of the extent to which the covenant not to sue limits Chrome Hearts' ability to proceed with the two trademark infringement lawsuits filed in France. This request constitutes the core of the declaratory relief claim and does not implicate conduct protected by the United States or California Constitutions.

Plaintiffs' requests for a judicial determination concerning lawsuits filed elsewhere in the world (which therefore includes the United States) and an injunction against future lawsuits violating the covenant not to sue are merely incidental to the core claim, and therefore not sufficient to trigger section 425.16. (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414 [9 Cal.Rptr.3d 242] ["if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion"].) The trial court therefore erred in finding that section 425.16 applied to plaintiffs' causes of action.

Because we conclude that Chrome Hearts failed to meet its initial burden of demonstrating that plaintiffs' causes of action arise from an act in furtherance of the right of petition or free speech under the United States or California Constitutions, the burden never shifted to plaintiffs to demonstrate a probability of prevailing on their claims. Accordingly, we end our analysis here.[3]

---

[3] We deny as moot Chrome Hearts' request that we take judicial notice of subsequent orders by the French appellate courts and the French Code of Civil Procedure.

## DISPOSITION

The order denying Chrome Hearts' special motion to strike is affirmed. Plaintiffs to recover their costs on appeal.

Ashmann-Gerst, J., and Chavez, J., concurred.

The petition of appellant Chrome Hearts, LLC, for review by the Supreme Court was denied February, 18, 2010, S179385.