Filed 5/19/22  Sweetflower Pasadena v. City of Pasadena CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| SWEETFLOWER PASADENA, LLC,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>CITY OF PASADENA,<br><br>     Defendant,<br><br><br>HARVEST OF PASADENA, LLC,<br><br>     Real Party in Interest and Appellant. | B308645<br><br>(Los Angeles County Super. Ct. No. 20STCP01048) |

APPEAL from an order of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Gordon Rees Scully Mansukhani, Douglas Smurr, Charles V. Berwanger and Reid E. Dammann for Real Party in Interest and Appellant.

No appearance for Defendant.

Nossaman, Artin N. Shaverdian, Gabriela S. Pérez, Gregory W. Sanders and John J. Flynn III for Plaintiff and Respondent.

———————————

SweetFlower Pasadena, LLC filed a verified petition for writ of mandate and complaint seeking to compel the City of Pasadena to set aside a conditional use permit the City had granted to SweetFlower's competitor, Harvest of Pasadena, LLC, and to obtain a judicial declaration that Harvest's conditional use permit was invalid, making Harvest ineligible to obtain the additional permits required to open and operate a retail cannabis store in the City. Harvest, named in SweetFlower's petition/complaint as real party in interest, filed a special motion to strike all or part of the petition/complaint pursuant to Code of Civil Procedure section 425.16.[1] The trial court denied Harvest's motion, concluding none of SweetFlower's claims arose from protected speech or petitioning activity. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *SweetFlower's Petition and Complaint*

According to SweetFlower's petition/complaint, in June 2018 City voters approved two initiative measures to legalize and regulate commercial cannabis businesses within City boundaries. (See Pas. Mun. Code, §§ 5.28.010 et seq., 5.78.010 et seq., 8.11.010 et seq., 17.50.066.) The approved ordinances authorized the operation of up to six retail cannabis businesses within City limits; included zoning restrictions that required the businesses

———————————

[1] Statutory references are to this code unless otherwise stated.

2

to be at least 1,000 feet from any other cannabis retailer or cultivation site and 600 feet from specified "sensitive uses," such as any school, park or childcare center; and limited cannabis retailers to one per city council district.  The initiative measures authorized the City's manager or his or her designee to promulgate the rules and procedures governing the application process for the necessary City permits.[2]

   a. *SweetFlower's application for a use permit*

After a detailed vetting process the City selected SweetFlower, Harvest and four other candidates to apply for a retail cannabis conditional use permit.  Because zoning restrictions and other limitations in the initiative measures meant that fewer than six cannabis retail stores could operate simultaneously in the City, the City adopted a first-in-line selection procedure for the six eligible candidates to apply for a conditional use permit.  Under those rules permit applications would be processed in the order received, with the first completed application for a permit to operate in a specified council district able to "lock in" the available spot for that district.  Any changes to a submitted application would void the previous application, sending the applicant to the back of the line.

SweetFlower was the first candidate to submit its conditional use permit application on June 12, 2019.  On June 27, 2019 the City notified SweetFlower its application was incomplete and would not be processed because the location map

---

[2]    Some provisions of the initiative measures, codified in the Pasadena Municipal Code in 2018, were amended by the City in November 2021.  Those amendments are not at issue in this appeal.

SweetFlower included had not been prepared by a licensed surveyor, a rule SweetFlower alleged the City adopted after SweetFlower submitted its application. On June 27, 2019 SweetFlower submitted a second application, this time including a certification that its location map had been reviewed by a licensed surveyor. The City rejected the second application, explaining "reviewed by" a licensed surveyor was not the same as "prepared by" a licensed surveyor. When SweetFlower submitted its third application on July 3, 2019, the City refused to process it because the City had already approved applications of two of SweetFlower's competitors, including Harvest.

   b. *SweetFlower's petition/complaint*

SweetFlower filed this lawsuit for a writ of mandate pursuant to sections 1085 and/or 1094.5 to compel the City to set aside Harvest's conditional use permit.[3] SweetFlower alleged the

---

[3]   In addition to this lawsuit, SweetFlower filed at least three other petitions for writs of mandate involving the City's cannabis-related conditional use permit decisions. (See Super. Ct. L.A. County, no. 20STCP00038 [challenging the City's denial of SweetFlower's own conditional use permit application] (SweetFlower's permit action); Super Ct. L.A. County, no. 20STCP01456 [challenging the City's approval of a conditional use permit for Integral Associates Dena, LLC, a SweetFlower competitor])(the Integral action); Super. Ct. L.A. County, no. 20STCP03212 [challenging the City's rejection of SweetFlower's request that Integral's conditional use permit be set aside based on a material change of control at Integral] (the change-of-control action).

   SweetFlower dismissed its appeal from the judgment entered against it in its permit action (case no. B312571). Integral has appealed from the trial court's orders denying the

4

City had arbitrarily enforced its own rules by interpreting its application requirements liberally for Harvest and strictly for SweetFlower. In particular, SweetFlower alleged the City "deemed Harvest's application 'complete' even though it was missing the same location map 'prepared by a licensed surveyor,' the lack of which spelled doom for SweetFlower's application. Harvest's application was also missing a signed master application form, master lease, and the written consent of the property owner of Harvest's proposed location," all of which City rules required. "The City also violated its own rules by permitting Harvest to supplement its purportedly 'complete' application with a signed master application form without requiring Harvest to forfeit its place in line for processing, while refusing SweetFlower the same opportunity." And, SweetFlower alleged, "the City approved Harvest's [conditional use permit] for a location that does not meet the sensitive receptors distance requirement" of the initiative ordinances. SweetFlower asserted essentially the same allegations to support its claim for a judicial declaration that Harvest's conditional use permit was wrongfully approved.

SweetFlower sought (1) a peremptory writ of mandate ordering the City to set aside its grant of a conditional use permit to Harvest; (2) an injunction prohibiting Harvest from taking any further action in reliance on the invalid conditional use permit and prohibiting the City from taking any action to process applications by Harvest for additional permits based on the noncompliant conditional use permit; and (3) a judicial

---

special motions to strike filed in the Integral action (case no. B308897) and the change-of-control action (case no. B312412).

5

declaration that Harvest is ineligible to apply for additional permits premised on its noncompliant, and thus invalid, conditional use permit.

2. *Harvest's Special Motion To Strike*

Harvest filed a special motion to strike the petition/complaint under section 425.16. Harvest argued the alleged deficiencies in its permit application and statements by City officials in administrative hearings discussing the City's permit application requirements[4] were protected activities within the meaning of section 425.16, subdivision (e)(1) and (e)(2), and SweetFlower's "claims against Harvest," a request for a judicial declaration that Harvest's conditional use permit was invalid and an injunction barring Harvest from relying on that permit, arose from those protected activities. Harvest also argued SweetFlower could not demonstrate any of its claims against Harvest had minimal merit.

In its opposition to Harvest's motion SweetFlower argued every claim in its petition/complaint was directed to the City's arbitrary decision to apply its amendment rules more liberally for Harvest and more strictly for SweetFlower. Although the petition/complaint included a prayer for an injunction barring

---

[4] The petition/complaint quoted (1) the City's planning director in a zoning board hearing on SweetFlower's administrative appeal explaining what the requirement, "prepared by a licensed surveyor," meant; (2) the chair of the zoning board questioning at the same hearing whether other applications by SweetFlower's competitors, including Harvest, were incomplete under this standard; and (3) members of the city council cautioning the same "strict standards" should apply to all applications, not just SweetFlower's.

6

Harvest from relying on its conditional use permit to obtain further cannabis-related permits from the City, that request, like its request for a judicial declaration that the use permit was invalid, was not a separate claim against Harvest, but a prayer for relief aimed at the City's actions in issuing the initial permit and any further permits based on the invalid conditional use permit. The statements by City officials and allegations concerning Harvest's application were included in the petition/complaint as context—evidence of the City's arbitrary conduct—not the basis for any claim of liability against Harvest.

The trial court denied Harvest's special motion to strike. The court ruled that, while statements by government officials certainly constituted protected activity under section 425.16, subdivision (e)(1), and Harvest's application for a permit, protected activity under section 425.16, subdivision (e)(2), the only bases for liability alleged were the City's decisions to approve and deny use permits, unprotected acts of governance. Because Harvest failed to carry its threshold burden to demonstrate any claims against it arose from protected speech or petitioning activity, the court denied Harvest's special motion to strike without addressing whether SweetFlower could demonstrate its claims had minimal merit.

Harvest filed a timely notice of appeal from the order denying its special motion to strike.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 425.16, commonly known as the anti-SLAPP statute, makes available a special motion to strike certain meritless claims early in the litigation: "A cause of action against a person arising from any act of that person in furtherance of a

7

person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619-620 ["[a] court may strike a cause of action only if the cause of action (1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claim"].)

Pursuant to section 425.16, subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a motion under section 425.16, the trial court engages in a two-step process. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the

8

required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*); accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*); *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)  If the moving party fails to demonstrate that any of the challenged claims for relief arise from protected activity (the first step), the court properly denies the motion to strike without addressing the probability of success (the second step).  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81; *Verceles v. Los Angeles United School Dist.* (2021) 63 Cal.App.5th 776, 784.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Park, supra,* 2 Cal.5th at pp. 1062-1063; accord, *Bonni, supra,* 11 Cal.5th at p. 1009.)  Thus, "[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute.  A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); see *Bonni*, at p. 1009 ["[t]he defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity"]; *Park*, at p. 1060 [same].)

A motion pursuant to section 425.16 need not challenge an entire cause of action as pleaded in the complaint.  (*Bonni, supra,* 11 Cal.5th at p. 1010; *Baral, supra,* 1 Cal.5th at p. 382.)  Rather, "courts should analyze each claim for relief—each act or set of

9

acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni*, at p. 1010; accord, *Baral*, at p. 395; *Musero v. Creative Artists Agency, LLC* (2021) 72 Cal.App.5th 802, 815; see *Park, supra,* 2 Cal.5th at p. 1063 [in determining whether a claim arises from protected activity, "courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability"].)

We review do novo an order granting or denying a special motion to strike under section 425.16. (*Wilson, supra,* 7 Cal.5th at p. 884; *Park, supra,* 2 Cal.5th at p. 1067.)

2. *The Court Properly Concluded SweetFlower's Claims Did Not Arise From Protected Speech or Petitioning Activity*

SweetFlower's petition for writ of mandate alleged the City violated its own rules when it (1) allowed Harvest to amend its application without losing its place in line and then (2) approved Harvest's conditional use permit application despite similar deficiencies that caused the City to deny SweetFlower's application and send it to the back of the line. As Harvest acknowledges in its appellate briefs, those claims against the City for its permit-related decisions are based on the City's acts of governance, not the City's protected speech or petitioning activity. (See *Shahbazian v. City of Rancho Palos Verdes* (2017) 17 Cal.App.5th 823, 835 [petition/complaint challenging a city's decision to deny plaintiff a permit while granting one to his neighbor did not arise from protected activity within meaning of section 425.16; acts of governance were the basis for liability, not

10

the city's statements]; *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1211 [petition for writ of mandate alleging a city violated its own rules by awarding a government contract to the plaintiff's competitor without requiring the competitor to undergo a competitive bidding process did not arise from protected activity within the meaning of section 425.16; the statements by government officials quoted in the complaint "assist in telling the story"; the claims are not based on those statements but on "state and municipal laws requiring" the City of Pico Rivera to award certain contracts through competitive bidding]; see also *Park, supra*, 2 Cal.5th at p. 1068.)

Harvest contends, however, that the "*key to* [its anti-SLAPP] *motion and this appeal*" is that the petition/complaint did not just assert claims against the City for the City's conduct. It also alleged claims against Harvest—a request for a judicial declaration Harvest's conditional use permit was invalid and an injunction preventing Harvest from relying on the invalid conditional use permit as a basis for obtaining further permits.[5]

---

[5]    SweetFlower's petition/complaint requested an injunction to prohibit "Harvest from taking any further action or incurring any further costs in reliance on the invalid CUP [conditional use permit] (including, but not limited to, expenses related to obtaining the additional permits required by the City for operation of a Cannabis retail store . . . and/or undertaking development of the 169 West Colorado Boulevard location for which the CUP was unlawfully granted), and prohibiting the City from taking any action to process any applications by Harvest for any of the aforementioned permits, or to issue any such permits to Harvest."

These claims, Harvest argues, were based on, and thus arose from, Harvest's statements in its permit application and the City's statements during official hearings, protected activity within the meaning of section 425.16, subdivision (e)(1) and (e)(2).

When considering whether a claim arises from protected speech or petitioning activity within the meaning of section 425.16, the focus is on the ""'acts on which liability is based'""" (*Bonni, supra,* 11 Cal.5th at p. 1012, italics omitted), not the damages suffered (*Renewable Resources Coalition, Inc. v. Pebble Mines Corp.* (2013) 218 Cal.App.4th 384, 396) or any other type of remedy sought, including an injunction (see *Guessous v. Chrome Hearts, LLC* (2009) 179 Cal.App.4th 1177, 1187 [anti-SLAPP motion is properly directed to a cause of action, not the relief sought; "'injunction relief is a remedy, not a cause of action'"]; *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 162 [same]).[6] Here, the only basis for liability is the City's approval of Harvest's application, either in violation of its own rules or arbitrarily, in contravention of the strict standard it

---

[6] Although *Guessous v. Chrome Hearts LLC, supra,* 179 Cal.App.4th 1177, and this division's opinion in *Marlin v. Aimco, supra,* 254 Cal.App.4th 154, were decided before *Baral, supra,* 1 Cal.5th 376, the distinction in those cases between the wrong alleged and the remedy sought remains valid post-*Baral*: It is the claim, not the remedy, to which an anti-SLAPP motion is properly directed. (See *Baral,* at p. 395 [anti-SLAPP motion is properly directed to "allegations of protected activity that are asserted as grounds for relief"; "the targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy," italics omitted].)

applied to SweetFlower.  There are no allegations of Harvest's liability alleged anywhere in the petition/complaint.  Put simply, Harvest's undisputed engagement in protected speech and petitioning activity—including submission of its permit application, deficient or not—is not the wrong alleged.

Dicta in *Rudisill v. California Coastal Com.* (2019) 35 Cal.App.5th 1062, a case decided by Division Two of this court, on which Harvest relies to support its argument SweetFlower's request for an injunction is dispositive on the question, are not persuasive.  In *Rudisill* petitioners sought a writ of mandate directed to the City of Los Angeles and the California Coastal Commission, challenging various permit decisions and naming several real property developers as real parties in interests.  The developers filed special motions to strike pursuant to section 425.16.  The superior court denied the motion, ruling the petition for writ of mandate was directed to government decisionmaking, not the protected activity of the developers in seeking permits.  The superior court also sanctioned the developers for filing a frivolous anti-SLAPP motion, concluding any reasonable attorney would have recognized the writ petition concerned government decisionmaking, not the protected activities of the developers.  (*Id.* at p. 1069.)

In their appeal from the sanctions order (the developers did not appeal the order denying their anti-SLAPP motion), the developers argued their special motion to strike was not frivolous because they reasonably believed, based on some of the allegations in the petition relating to their piecemeal methods to obtain approvals, the mandamus action had asserted a claim against them for their protected conduct.  The *Rudisill* court held the motion was not frivolous, the only issue before it.  In dicta

13

supporting the superior court's ruling denying the special motion to strike, the *Rudisill* court also observed, in the language Harvest emphasizes, that the petitions for writ of mandate did not seek an order directly affecting the developers' participation in the government process "such as, for example, an order precluding [the developers] from submitting any further permits[]." (*Rudisill, supra,* 35 Cal.App.5th at p. 1075.)

Harvest argues that, by seeking an injunction barring Harvest from obtaining additional permits, SweetFlower has alleged the very claim the *Rudisill* court suggested would be subject to a special motion to strike. Harvest reads too much into language that simply recognizes claims directed to blocking petitioning activity could be subject to a special motion to strike. Here, as discussed, there was no claim asserted against Harvest. Even if the remedy sought in a petition or complaint were properly considered part of the section 425.16 analysis of the elements of the claim, it does not supplant the requirement that the protected activity be the basis for liability. There were no allegations of wrongdoing asserted against Harvest.[7]

Finally, quoting from the court's order denying its special motion to strike, Harvest contends the trial court improperly

---

[7] SweetFlower's request for injunctive relief, to the extent it encompasses Harvest's activities without any concomitant allegations of Harvest's wrongdoing, is certainly questionable and may well be an appropriate target of a traditional motion to strike by Harvest. However, the possible overbreadth of SweetFlower's remedial request, without more, does not create a claim where there is otherwise none, let alone make the petition/complaint, or any aspect of it, subject to a special motion to strike under section 425.16.

focused on the gravamen of the action, rather than the claims included within each cause of action, as *Baral* requires.[8] Harvest made the same argument in the trial court. Addressing language in the court's tentative ruling, Harvest's counsel tactfully suggested the court's analysis disregarded Supreme Court pronouncements in *Baral, Wilson,* and *Park.* In response the court explained, consistent with those cases, it had looked within the causes of action to the wrongs alleged and found only acts of governance by the City: "The speech is not the wrong. The petitioning activity is not the wrong."[9] The trial court's use of the term "gravamen" did not inform its analysis. (See *Bonni, supra,*

---

[8] In its tentative ruling, which the court adopted as its final order, the trial court stated in the introduction to the governing law section, "'[I]n the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech.' (*City of Cotati v. Cashman, supra,* 29 Cal.4th at [p.] 78.) '[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies.'"

[9] In its analysis the trial court quoted extensively from *Park*: "As discussed in *Park v. Board of Trustees of California State University*[, *supra,*] 2 Cal.5th [at p. 1060]: [¶] '[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" "Petitioner does not attack the deliberations, discussions or vote. Thus, Petitioner's claims are not based on speech but on non-protected 'acts of governance.'"

11 Cal.5th at p. 1012 ["[W]e do not suggest that every court that has continued to label its approach a gravamen test even after *Baral* has erred. Some courts have invoked the term not in the way [defendant] suggests—to determine the essence or gist of a so-called mixed cause of action—but instead to determine whether particular acts alleged within the cause of action supply the elements of a claim [citation] or instead are incidental background"].) More importantly, it is not the basis of ours.[10]

In sum, Harvest did not carry its threshold burden to demonstrate SweetFlower's claims arose from protected activity under section 425.16. Accordingly, the trial court did not err in denying the special motion to strike.

---

[10]     Harvest's request for judicial notice of successful anti-SLAPP motions it has filed in unrelated actions (Harvest's first request for judicial notice) is denied as irrelevant. Harvest's request for judicial notice of SweetFlower's dismissal of its appeal in a related case (Harvest's second request for judicial notice) is denied as unnecessary.

## DISPOSITION

The trial court's order denying Harvest's special motion to strike is affirmed.  SweetFlower is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.